# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

C.J. STEWART, BENJAMIN DARDEN and ) 
SHYHEIM D. EL-MUMIN, a/k/a James Lenoir, ) 
           ) 
           Plaintiffs, ) 
           ) 
           v.            )       No. 07-4080-CV-C-MJW 
           ) 
LARRY CRAWFORD, et al.,        ) 
           ) 
           Defendants. ) 

## ORDER

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the

nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Exhaustion of Administrative Remedies

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion of all administrative remedies as set forth by the Missouri Department of Corrections Offender Grievance Procedures must be completed prior to a prisoner filing suit. See Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003) (dismissal is required under section 1997e(a) if an inmate has failed to exhaust all available administrative remedies *prior* to filing suit). When multiple prison conditions claims have been joined, the plain language of section 1997e(a) requires that all available prison grievance remedies must be exhausted as to all claims on which a prisoner is seeking relief. Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000) (per curiam). Exhaustion of all administrative remedies means that a prisoner must use all steps that the Department of Corrections requires and must follow such steps properly. Woodford v. Ngo, 548 U.S. 81 (2006) (section 1997e(a) requires proper exhaustion of administrative remedies). A prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. Id.

The grievance documentation submitted to the court shows that plaintiffs have not exhausted the prison's administrative remedies on all their claims. Plaintiffs' arguments that any unexhausted claims were not exhausted because of denial of grievance forms, or a transfer to another facility, are not supported by the evidence. The evidence shows that other IRR's, grievances and grievance appeals were successfully filed and exhausted by plaintiffs on other claims. Moreover, the evidence shows that there are very specific procedures for inmates to follow when transferred to a different corrections facility during the processing of a grievance, and for when an inmate does not receive a timely response to an internal resolution request (IRR)

2

or grievance filed.  (Defendants' Motion for Summary Judgment, Exh. A, Department Manual, Offender Grievance.)  Plaintiffs' failure to follow such procedures does not constitute proper exhaustion.

The evidence shows that the following claims have been exhausted by plaintiff Stewart: (1) double-celling in administrative segregation; (2) use of window covers on administrative segregation cell doors; (3) placement in a strip-cell on June 5, 2008; (4) sick-call being scheduled during only hour of administrative segregation recreation time; and (5) denial of transfers due to enemy waiver requirements.  No argument is made that the claims of inadequate administrative segregation review and those challenging conduct violations received have not been exhausted; therefore, these claims will be assumed exhausted.

The evidence shows that plaintiff El-Mu'min exhausted only his claim regarding placement on a restraint bench.  No argument is made, however, that the claims of inadequate administrative segregation review and those challenging conduct violations received have not been exhausted; therefore, these claims are assumed exhausted.

As to Darden, because the court is assuming exhaustion as to claims regarding administrative segregation assignment and conduct violations received, Darden can proceed on these claims.  The evidence shows that plaintiff Darden has not exhausted any other claims.

The only claims which can proceed in this case are those set forth above for each individual defendant.  All other claims for each defendant are unexhausted and are dismissed, without prejudice, pursuant to 42 U.S.C. § 1997e.  See Davis v. Harmon, No. 10-1863, slip op. (8th Cir. Aug. 16, 2010) (it is err for district court to consider merits of claim when not fully exhausted; rather, dismissal, without prejudice, is proper).

**Eighth Amendment Claims**

Stewart's Double-Celling Claim

The undisputed evidence shows that Missouri Department of Corrections has a departmental policy requiring internal classification of inmates, and that this process is used when assigning inmates to double cells.  Every inmate receives an adult internal classification score (AICS) and the inmates are put together in cells based on these numbers.  Stewart's claims that he was placed with incompatible cellmates in spite of such classification system is

3

insufficient to support his claims that his Eighth Amendment rights have been violated. Double-celling is considered cruel and unusual punishment only if it leads to deprivations of essential food, medical care, or sanitation, or if it increases violence among inmates or creates other conditions intolerable for prison confinement. Cody v. Hillard, 830 F.2d 912, 913 (8th Cir. 1987). In Cody, the Eighth Circuit required more than evidence of violence to determine double-celling was cruel and unusual punishment. The court concluded there was no evidentiary basis to conclude double-celling had caused or increased incidents of violence. Id. at 915. The court noted that prison violence is not a recent development and occurs with similar frequency in institutions that do not double-cell. Id.

Stewart has failed to come forward with evidence that double-celling denied him food, medical care, or sanitation or caused an increase in violence in administrative segregation. Stewart's claims are not supported by sufficient evidence from which a reasonable jury could conclude that the MDOC classification policy, which made cell assignments based on inmates having the same AICS, and prevented inmates from being placed with persons declared their enemy, was deliberately indifferent to a substantial risk of serious harm allegedly posed by double-celling. There is insufficient evidence from which a reasonable juror could find that MDOC's double-celling in administrative segregation evinces the wanton and unnecessary infliction of pain necessary to constitute a violation of the Eighth Amendment. See Rhodes v. Chapman, 452 U.S. 337 (1981) (district court's finding that double-celling constituted cruel and unusual punishment was unsupportable); Cody, 830 F.2d 912 (practice of double-celling did not support an Eighth Amendment claim).

<u>Stewart's Claims Challenging Use of Cell Door Window Covers/Temporary Strip Cell/and Limitation on Recreation Time</u>

Plaintiff Stewart claims that conditions of his administrative segregation violated his constitutional rights under the Eighth Amendment. Stewart claims defendants' use of a cover placed over his cell door window, from time to time, without justification, violated his rights. Stewart also claims that when he declared his cell-mate his enemy on June 5, 2008, he was put in a strip cell, in violation of his rights. Finally, Stewart also claims the administrative segregation

policy requiring sick-call attendance to be during the one hour of daily administrative segregation recreation time violated his rights.

Under the Eighth Amendment, officials must ensure that prisoners are afforded "humane conditions of confinement," such as "adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To be cruel and unusual, the plaintiff must be deprived of one or more of these basic necessities of life. Brown v. Nix, 33 F.3d 951, 955 (8th Cir. 1994). Establishing an Eighth Amendment conditions-of-confinement claim requires a showing of two requirements. "First, the deprivation alleged must be objectively 'sufficiently serious,' . . ." Id.; Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)); and "[s]econd, a prison official must be, as a subjective state of mind, deliberately indifferent to the prisoners' health or safety." Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (abrogated on other grounds) (citing Farmer v. Brennan, 511 U.S. at 837). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "[O]nly a wanton infliction of pain implicates the Eighth Amendment." Id. at 834.

Here, the only evidence is the general claim that defendant Friesen, a Corrections Officer II in the administrative segregation unit at JCCC, was arbitrarily ordering officers to cover the cell windows of all administrative segregation inmates. The evidence shows that the JCCC policy allowed for placement of window coverings when an inmate's behavior offends and annoys others and until his behavior improves. (Defendants' Motion for Summary Judgment, Exh. TT.) Stewart has come forward with insufficient evidence from which a reasonable juror could find that his general allegations of arbitrary placement of window coverings denied him the minimal measure of life's necessities such that it posed an excessive risk to his health or safety.

Stewart's placement in a strip cell occurred only for a period of one day, and was used as an alternative to placing him on the restraint bench. The evidence shows that inmates can be placed in a temporary cell, if one is available, when an inmate refuses a cellmate. Stewart was

placed in the cell because he requested protective custody from his cellmate. He was allowed to wear boxer shorts, a t-shirt, and socks and he had a mattress. Considering that the strip-cell deprivations were minimal, that the cell was used for safety reasons, and that Stewart's exposure to the cell was short in duration, this court finds that no reasonable jury could determine that Stewart's constitutional rights under the Eighth Amendment were violated by his placement in a strip cell.

Finally, Stewart has insufficient evidence to support his claims that he was unconstitutionally denied recreation while in administrative segregation. A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." Wishon v. Gammon, 978 F.2d 446, 448-49 (8th Cir.1992). To prevail on his claims, Stewart must show that defendants were deliberately indifferent to his exercise needs. Id. The evidence does not support Stewart's claims that defendants' requiring him to attend sick-call during his recreation time threatened his health or that his muscles were being allowed to atrophy. Because there is no evidence of a health risk for Stewart, there also is no evidence to support that defendants were deliberately indifferent to a serious risk of harm to plaintiff's health. See Wishon, 978 F.2d at 449 (45 minutes of exercise per week not constitutionally infirm).

El-Mu'min's Claims Challenging Use of Restraint Bench and Denial of Medical Care

The standard for an Eighth Amendment claim is set forth above.

The undisputed facts show that El-Mu'min was placed on a restraint bench on September 9, 2005, for refusing his cell-mate. Policy at JCCC provides that an inmate will be placed on the restraint bench if he refuses a cell and there are no open cells available. Here, El-Mu'min declared his cellmate an enemy, and therefore, was removed from his cell. El-Mu'min claims his cell-mate had threatened him with physical harm. El-Mu'min remained on the restraint bench until 1:40 a.m. on September 11, 2005. There is a dispute about whether El-Mu'Min was given regular bathroom breaks and whether he was checked by a nurse during his time on the bench. El-Mu'min claims that during this time, he was not checked by a nurse, and was given only one bathroom break. El-Mu'min claims that, despite the alleged offers for him to use the bathroom, as asserted by defendants, these offers were contingent upon his accepting an incompatible cell-mate, and therefore, he was unable to take bathroom breaks.

It is also undisputed that on September 11, 2005, at 2:00 p.m., El-Mu'min declared his new cell-mate as an enemy, and requested protective custody, alleging threats of harm against him by this new cell-mate. At 2:21 p.m. on that same date, El-Mu'min was placed back on the restraint bench. El-Mu'min also received a conduct violation for organized disobedience which stated it was issued for his requesting protective custody in conjunction with seven other inmates at the same time in absence of actual need. Plaintiff disputes the validity of this conduct violation. El-Mu'min remained on the bench until 10:20 a.m. on September 12, 2005, at which time he was again placed in a cell. El-Mu'min disputes the facts asserted by defendants regarding bathroom breaks and nurse checks. El-Mu'min claims he was not given a bathroom break during this time nor was a nurse allowed to properly examine him.

The medical records show that El-Mu'min developed a three-to-four centimeter blister on his right buttocks from sitting on the restraint bench for a long period. El-Mu'min does not dispute that he received some medical care for his blister starting on September 13, 2005, but disputes that it was adequate.

El-Mu'min declared a medical emergency on September 21, 2005, at 8:15 p.m., claiming he could not move from the waist down. El-Mu'min was checked by a nurse. The nurse and Sgt. Friesen agreed that custody would monitor him, and he was given a pillow and a blanket. El-Mu'min declared another medical emergency at 9:00 p.m., stating he could not feel his legs and was vomiting. The nurse again assessed him, noting no changes and again affirming custody to monitor his condition and report any changes. El-Mu'min claims Sgt. Friesen refused to allow the nurse to properly examine him.

On September 22, 2005, at 12:22 a.m., El-Mu'min again declared a medical emergency. It was determined that he had already declared two prior emergencies and been assessed by the nurse each time, and that he did not need to be seen.

On September 22, 2005, at 9:30 a.m., El-Mu'min was examined by medical, and was ordered to be taken to the hospital by ambulance. Concerns were noted with regard to no appreciable response to pain stimuli and possible migration of a bullet in his back, causing inability to move lower extremities. El-Mu'min states he has suffered nerve damage caused by defendants' chaining him to a restraint bench.

7

In taking the facts in the light most favorable to El-Mu'min, there is sufficient evidence from which a reasonable jury could find that defendants' actions in placing of El-Mu'min on the restraint bench with his hands and feet completely shackled for multiple days during which he was denied bathroom breaks and adequate medical treatment, resulting in injuries, including a blister on his buttocks and nerve damage, constituted deliberate indifference to El-Mu'min's health and safety, in violation of the Eighth Amendment. There is also sufficient evidence for a reasonable jury to find that El-Mu'min's claimed denial of medical care subsequent to his placement on the restraint bench violated his Eighth Amendment rights.

Defendants with Sufficient Personal Involvement

Plaintiff is estopped from relying on the doctrine of respondeat superior when bringing an action under 42 U.S.C. § 1983. See Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990) ("It is well settled that respondeat superior cannot be the basis of liability in a § 1983 action."). A supervisor cannot be held liable under section 1983 for an employee's unconstitutional actions. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995); Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993); Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990). Instead, a supervisor can be held liable only for personal involvement in a constitutional violation, or when his or her corrective inaction amounts to deliberate indifference or tacit authorization of the violation. Boyd, 47 F.3d at 968; Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990).

Here, the only defendants against whom El-Mu'min has sufficient evidence to support personal involvement in his restraint bench claims and subsequent medical care are defendants Cassady, Rupple, Friesan, Walling, Reed and Dormire. Although Dormire, as the Warden of JCCC, is clearly a supervisor, the evidence shows facts supporting his personal involvement. JCCC procedure required Dormire to be notified of El-Mu'min's placement on the restraint bench for an extended period. Moreover, El-Mu'min specifically claims that Dormire made an appearance in administrative segregation while he was restrained to the bench, and Dormire affirmed his continued placement on the restraint bench.

**Due Process Claims**

<u>Claims of Stewart, El-Mu'min, and Darden Challenging Conduct Violations and Administrative Review of Assignment to Administrative Segregation</u>

Plaintiffs Stewart, Darden and El-Mu'min claim they were denied due process when disciplined. Plaintiffs do not have a right to due process under the Fourteenth Amendment unless they have a protected life, liberty or property interest. Liberty interest may arise from the Due Process Clause or from state laws. <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976). The Due Process Clause itself does not provide an inherent right to remain in or be returned to general population. <u>Hewitt v. Helms</u>, 459 U.S. 460, 468-69 (1983) (overruled, in part, on other grounds by <u>Sandin v. Connor</u>, 515 U.S. 472 (1995)).

Where an inmate claims that he has a state-created liberty interest in freedom from administrative segregation, the court looks at the allegations or facts in light of the discussion in <u>Sandin</u>, 515 U.S. 472.

> [W]e recognize that states may under certain circumstances create liberty interest which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Id.</u> at 483-84 (citations omitted).

To determine whether an inmate possesses a liberty interest, the court compares plaintiff's conditions in segregation with those he would expect to experience as an ordinary incident of prison life. <u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003). It does not consider the procedures used to confine the inmate in segregation. The Eighth Amendment has consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship. <u>Id.</u> <u>See also</u> <u>Johnson v. Hamilton</u>, 452 F.3d 967, 973 (8th Cir. 2006).

Stewart, El-Mu'min and Darden have failed to come forward with evidence that would support that they have a liberty interest in not being assigned to administrative segregation. Based on the evidence, a reasonable jury could not find that Stewart's assignment to administrative segregation was an atypical and significant hardship in relation to the ordinary

incidents of prison life at JCCC. Without a liberty interest, plaintiff has no due process claim with regard to assignment to administrative segregation.

Moreover, even though the protections of due process do not apply, the court notes that the evidence shows MDOC has procedures in place to periodically review inmates' administrative assignment, which would comport with due process. Inmates receive a hearing before the Administrative Segregation Committee within thirty calendar days of initial assignment and every ninety calendar days thereafter. Inmates are given prior notice of the Committee hearing and are allowed to make a statement and present documentary evidence at the hearing. Upon review, the Committee makes a recommendation about the inmate's continued assignment to administrative segregation.

Stewart's Claims Challenging Conditioning Transfers on Signing Enemy Waivers

Stewart claims his due process rights were violated because transfer to protective custody or other institutions was conditioned on his signing enemy waivers. A denial of a transfer does not constitute a violation of due process. There is no liberty interest in assignment to any particular prison. Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996) (citing Meachum v. Fano, 427 U.S. 215, 224 (1976)). "[A] prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to . . . a transfer." Murphy v. Missouri Dept. of Corr., 769 F.2d 502, 503 (8th Cir. 1985). Further, transfers may be made for a variety of reasons and may be based on informed predictions of what would best serve institutional security or the safety and welfare of the inmate. Gomez v. Grossheim, 901 F.2d 686, 688-89 (8th Cir. 1990) (citing Meachum v. Fano, 427 U.S. at 225). "[C]onstitutionally speaking, assignments [to particular prisons] are discretionary, so long as they are not done for prohibited or invidious reasons and do not rise to independent constitutional violations on their own weight." Moorman v. Thalacker, 83 F.3d at 973 (citing Vitek v. Jones, 445 U.S. 480 (1980).

Requiring an inmate to sign an enemy waiver prior to granting a transfer to an institution is a safety and security measure for Stewart and for the security of the prison's officers. An inmate is not transferred to an institution where he has enemies in an attempt to avoid conflict, fights, etc., at the new institution. Inmates are given the opportunity to waive an enemy because

the inmate might no longer consider the person to be an enemy.  Thus, conditioning transfer on signing enemy waivers is insufficient evidence from which a reasonable jury could find that Stewart was denied transfers in violation of his due process or other constitutional rights.

**Plaintiffs' Request for Injunctive Relief**

Plaintiffs' complaint requests that defendants be permanently enjoined from conducting administrative segregation in the manner described in the complaint.  None of the three plaintiffs are currently housed in administrative segregation at JCCC.  A request for injunctive relief from any conditions of confinement is moot after transfer to another prison.  Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999).

**Qualified Immunity and El-Mu'min's Claims Challenging
Placement on Restraint Bench and Denial of Medical Care**

Qualified immunity is an affirmative defense that shields governmental officials performing discretionary functions from liability for civil damages insofar as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In considering whether qualified immunity shields defendants, the court must consider the evidence in the light most favorable to El-Mu'min.  As with summary judgment, the court is required to make all reasonable inferences in favor of the nonmoving party.  The defendant bears the burden of pleading the defense, but the plaintiff bears the burden of showing the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.

In Saucier v. Katz, 533 U.S. 194 (2001), the Court set forth a two-part analysis to be used when determining whether defendants are entitled to qualified immunity.  Although the Supreme Court has said that the Saucier two-part analysis is not mandatory, it remains helpful in analyzing qualified immunity claims.  Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808 (2009).  At step one, the court determines whether the facts alleged show the defendants' conduct violated a constitutional right.  Saucier, 533 U.S. at 201.  The next step is to ask whether the right was

clearly established in light of the specific context of the case.  Id.  The Court goes on to explain that "[t]he question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards."  Id. at 208.

Here, although the Eighth Amendment rights on which plaintiff seeks relief are clearly established, there remains an outstanding dispute as to the evidentiary sufficiency of El-Mu'min's claims.  Defendants' reliance on their own version of the facts to support the argument that plaintiff's claims do not rise to the level of an Eighth Amendment violation cannot support the grant of qualified immunity when defendants' version of facts are disputed by El-Mu'min. See Williams v. Jackson, 600 F.3d 1007, 1011 (8th Cir. 2010) (prevalence of outstanding factual disputes precluded qualified immunity).  Further, if El-Mu'min's version of the facts were to be assumed true, that he was denied bathroom breaks and adequate medical care while on the restraint bench on and off for a period of multiple days, this court finds defendants' actions could support a constitutional violation, as set forth above.  The law on this was clearly established, and a reasonable MDOC officer would have known his actions were violating El-Mu'min's rights.  Therefore, defendants are not entitled to qualified immunity.

## Conclusion

For the reasons set forth above,

IT IS ORDERED that defendants' motion for summary judgment is granted, in part, and denied, in part.  [183]  It is further

ORDERED that the motion for summary judgment is denied on plaintiff El-Mu'min's claims against defendants Cassady, Rupple, Friesan, Walling, Reed and Dormire that his Eighth Amendment rights were violated by his placement on the restraint bench and denial of medical care.  It is further

ORDERED that summary judgment is granted on all remaining claims by plaintiffs El-Mu'min, Darden and Stewart.

Dated this 24th day of August, 2010, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge